# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ORR WATER DITCH CO., *et al*.,<br><br>    Defendants. | Case No. 3:73-cv-00003-LDG<br>Sub-File No. 3:73-cv-00028-LDG<br><br>**ORDER** |
| IN RE: Nevada State Engineer Ruling #6035 | |

    The Truckee-Carson Irrigation District (TCID), Churchill County, and the City of Fallon petition (#1) this Court for judicial review of Nevada State Engineer Ruling #6035. The petitioners acknowledge that the State Engineer granted the 53 change applications filed by the Truckee Meadows Water Authority (TMWA) "subject to the Truckee River Operating Agreement ("TROA") entering into effect. . . ." They argue, however, that the State Engineer's "determination was made without consideration of how the Applications operate under TROA, and without addressing whether the application violates the *Orr Ditch* Decree and the Truckee River Agreement, which they do." The petitioners also raise

issues concerning the State Engineer's determination as to consumptive use, the permitting of year-round diversion for storage, failing to consider the interaction of groundwater and surface water in Truckee Meadows, and the application of the primary and secondary permit process under §533.440.  The State Engineer and TMWA, the real party in interest, have each filed oppositions.  Having reviewed the record and the arguments of the parties, the Court denies the petition and affirms the ruling of the State Engineer.

Jurisdiction

This Court has jurisdiction to review Nevada State Engineer Ruling #6035 pursuant to the Final Decree entered in this matter, *United States v. Orr Water Ditch Co.*, Equity No. A-3 LDG (D. Nev. 1944); *United States v. Orr Water Ditch Co.*, 914 F.2d 1302 (9th Cir. 1990) (*Orr Ditch)*.

Standard of Review

State water law governs both the substance and procedure of Orr Ditch water rights. *Orr Ditch*, 914 F.2d at 1307-1308.  "The decision of the state engineer shall be prima facie correct, and the burden of proof shall be upon the party attacking the same."  Nev. Rev. Stat. §533.450(9).  The Court reviews questions of law *de novo*, *Orr Ditch* at 1307.  The Court will uphold the State Engineer's findings of fact if they are supported by substantial evidence.  *United States v. Alpine Land & Reservoir Co.*, 291 F.3d 1062, 1071-72 (*Alpine V.*)

Background

Section 205(a)(1) of the Truckee-Carson-Pyramid Lake Water Rights Settlement Act of 1990, Title II, Public Law 101-618, 32 Stat. 3294, 3306 ("Settlement Act"), required the Secretary of the Interior to negotiate what would become the Truckee River Operating Agreement ("TROA") with the State of Nevada, and the State of California (after consultation with other parties designated by these three parties).  Section 205(a)(2)

required that the Operating Agreement would provide for the operation of the Truckee River reservoirs and would ensure that the reservoirs would be operated to meet five purposes, including that the water stored and released would satisfy the exercise of water rights in conformance with the *Orr Ditch Decree*. Section 205(a)(4) required that TROA be submitted to this Court (sitting as the *Orr Ditch* court) "for approval of any necessary modifications in the provisions of the Orr Ditch decree." The TROA has been submitted to the Court for this approval of the modifications necessary to the *Orr Ditch Decree* in a separate proceeding seeking amendment of the *Decree*. That proposed amendment seeks modifications to the *Decree* that would incorporate the TROA into the *Orr Ditch Decree*, and would supercede portions of the Truckee River Agreement ("TRA") already incorporated into the *Decree*

Each of the change applications submitted by TMWA sought a permit that would "enter into effect simultaneously with the entry into effect of the Truckee River Operating Agreement."

### I)  The State Engineer Had Authority to Grant the Applications

The petitioners' first issue, which they present as three arguments, concerns whether the State Engineer lacked authority to grant the applications because this Court has not yet approved the necessary modifications to the *Orr Ditch Decree*. They argue (1) that the State Engineer does not have authority to approve an application that cannot currently be accomplished without violating the *Orr Ditch Decree*, (2) that the State Engineer should not approve an application that violates the TRA (in part because the TRA precludes a unilateral modification by a party to that agreement), and (3) the interstate nature of the applications requires that this Court first approve the proposed amendment to the *Orr Ditch Decree* before the State Engineer can consider an application. None of these arguments warrants reversal of the State Engineer's decision.

TMWA specifically notified the State Engineer, in its applications, that it sought permits that would not take effect until TROA took effect. The State Engineer granted the applications contingent upon the *Orr Ditch Decree* being modified to allow for the operation of TROA. The permits, as granted, do not allow TMWA to currently take any action that is contrary to the *Orr Ditch Decree*, as it currently exists. The permits, as granted, allow TMWA only to take any action in the future when such action, as a result of the modification of the *Orr Ditch Decree*, is not contrary to the *Orr Ditch Decree*. If this Court never approves the modification of the *Orr Ditch Decree*, the permits granted to TMWA will not allow it to take any action.

Whether the TRA precludes unilateral modification of any of its terms, or unilateral modification of the *Orr Ditch Decree*, is an issue appropriately considered in the proceeding to amend the *Orr Ditch Decree*. Indeed, the petitioners have asserted this issue in that proceeding in support of their opposition to any modification of the *Orr Ditch Decree.* The State Engineer's contingent approval of TMWA's applications will permit consideration and resolution of that issue before TMWA's permits become effective.

Finally, none of the decisions cited by Petitioners require or even suggest that, because the applications had an "interstate nature," this Court was required to first resolve the interstate changes of decreed water rights proposed by the TROA before the State Engineer could take any action on the applications.

**II)     The State Engineer Did Not Err in Excluding Evidence Regarding Anticipated Impacts of the TROA, the Proposed Modifications to the TRA and the *Orr Ditch Decree*.**

The State Engineer did not err in limiting or excluding evidence that the operation of TROA will injure existing water rights. As to the operation of TROA specific to the applications, the decision expressly recognizes that information was received regarding

TROA, but that the State Engineer received this information only for explanatory purposes, and did not rely upon this information in making his required determinations. To the extent that the State Engineer referenced TROA in Interim Decision #1, a review of that decision establishes that the State Engineer concluded that TROA provides for due allowances for losses in satisfaction of N.R.S 533.055.

### III) **The State Engineer's Use of the *Alpine Decree* Consumptive Use Allocation for Agriculture in the Amount of 2.5 acre-feet was Neither Arbitrary nor Capricious**.

The petitioners argued to the State Engineer that the consumptive use portion of the water right should be determined according to its most recent use, municipal, rather than its original decreed use, agricultural. To the extent they reassert that argument to this Court, it is without merit. The State Engineer correctly rested his decision upon the decreed water rights, and the determination whether injury would occur to those rights. In this case, the decreed water rights were awarded for agricultural use, and the subsequent change in use was permitted for the full duty as the overall impact of that first change (at full duty) would make more water available in the river.

The petitioners argue that the State Engineer erred in relying upon the *Alpine Decree* to determine that the agricultural consumptive use was 2.5 acre-feet per acre. A review of the ruling establishes that the respondents presented evidence and argued that the potential agricultural consumptive use was 2.9 acre-feet per acre, while the petitioners presented evidence and argued that the consumptive use should be 2.0 acre-feet per acre based on actual municipal use. The petitioners presented further testimony seeking to limit the agricultural consumptive use, asserting that actual historical consumptive use needs to be considered, as well as irrigation methods, application efficiency, crop type and variable sources of supply. The petitioners now argue that the State Engineer erred in relying upon

5

the *Alpine Decree* as the basis of its determination of the consumptive use.  A review of the State Engineer's decision reveals he did not rely solely on the *Alpine Decree*.  Rather, he relied upon the evidence and testimony presented by the respondents regarding potential agricultural consumptive use, which evidence was tempered in part by the testimony and evidence presented by the petitioners.  The State Engineer concluded, in part based on consideration of the Special Master's report prepared in the *Orr Ditch* litigation, that the petitioners' arguments regarding the appropriate measure of consumptive use was not consistent with the *Orr Ditch Decree*, as the *Decree* did not rely upon reference to specific crops or to the variability of water supply.  Rather, consumptive use was determined by reference to the irrigation of crops such as alfalfa.  The State Engineer agreed with petitioners, however, that the respondents' suggestion of 2.9 acre-feet per acre would most likely over-project the historical consumptive use of water used to irrigate alfalfa underlying the Court's decree.  In short, the ruling reveals that the State Engineer determined that the approach of the respondents resulted in a consumptive use figure (2.9 acre-feet per acre) that was too high.  Conversely, the approach of the petitioners resulted in a consumptive use (2.0 acre-feet per acre) that was too low.  Within this context, the State Engineer acknowledged that the prior court determination of 2.5 acre-feet per acre (as recognized in the *Alpine Decree* for lands above the Lahontan Reservoir) was within the range identified by the parties, and that under Nevada law could be properly considered.

       The Court cannot find error in the State Engineer's reliance upon the consumptive use determination in the *Alpine Decree* in reaching a final determination.  The State Engineer considered the evidence and arguments presented by both sides, noting both the strengths and the limitations of the positions for both sides.  It was within this context that the State Engineer further considered the consumptive use determined by a court for lands above the Lahontan Reservoir, which determination fell squarely within the range being proposed by the parties.

6

## IV) The State Engineer did not Err in Finding the Change Applications would not Injure Existing Rights.

The State Engineer's determination that TMWA's diversion of water into storage on condition that they divert no more than 25% of any water right in any one month is consistent with the terms of the *Orr Ditch Decree*.[1] Nothing in the *Orr Ditch Decree* limits this diversion to the historical growing season of April through October to match historical consumptive use patterns.

The State Engineer's denial of petitioners' protest on the basis that the proposed changes would negatively impact groundwater was appropriate. The petitioners seek remand "for a determination of whether the State Engineer should reduce the amount allocated under the Applications by an amount necessary to eliminate the negative effect on decreed surface waters." However, the State Engineer conditioned the diversion for storage to a reduced diversion rate proportional to the consumptive and non-consumptive portions of the water right. That is, the State Engineer reduced the amount diverted by the correct amount, the consumptive use portion of the water rights. Further, the applications seek a diversion for storage. As noted by the respondents, all of the water will eventually flow downstream, it will merely flow downstream at a different time.

The State Engineer's ruling does not unravel the protection to downstream users resulting from implementation of the 58% rule from 1982-1995, as the protection of downstream users was not a purpose of the 58% rule. Rather, this was a requirement under Rule 17 of Nevada's Public Service Commission (not the State Engineer) that new water service commitments provide additional surface water rights *for drought purposes*;

---

[1] More particularly, the State Engineer granted the permits subject to no more than 25% being taken into storage in any one month under a reduced diversion rate proportional to the consumptive and non-consumptive portions of the water right.

that is, it ensured that, even in a drought year, sufficient water would be available to meet the requirements of the new water service commitment.

### V) The State Engineer did not Err in Finding the Change Applications Complied with NRS 533.440(2).

The change applications sought to change of use of *Orr Ditch Decree* water rights to allow for storage of the water.  The beneficial use of the water that was stored was provided in four secondary applications filed with each primary application.  These secondary applications provided that the stored water could be released for municipal use during drought years, wildlife purposes, and incidental use at hydroelectric generation plants.  The State Engineer required a further secondary application to be filed regarding water that was directly diverted into reservoirs for municipal use.  These secondary uses would result in uses in or diversions from the Truckee River.

The *Orr Ditch Decree* adjudicated the waters of the Truckee River and its tributaries. The State Engineer did not err in concluding that the source of the water in these applications was the Truckee River, as the applications concerned a change of an existing appropriated Truckee River decreed water right for upstream storage.  Further, that this Court has not yet approved TROA does not render insufficient the evidence of an agreement to store the water, as the State Engineer conditioned the permits on this Court's approval of TROA.

### VI) The State Engineer did not Err in Relying on the Primary/Secondary Application Process in Approving the Applications.

The petitioners do not identify how the State Engineer's reliance on the primary/secondary application process was improper.  Rather, the State Engineer complied

with the provisions required of him by state law concerning applications to store and then use water for beneficial uses.

### VII)  The Proposed Storage and Secondary Uses of the Water is Not Detrimental to the Public Interest.

The petitioners argue that the storage of water not immediately needed is detrimental to the public interest.  The petitioners do not identify this as an issue protested to the State Engineer, and is thus precluded from asserting it in the first instance in this petition for review.  Further, even if timely asserted, Nevada's statutes expressly recognize that water may be stored, as identified in the primary application, and then beneficially used for the purposes identified in the secondary applications.

Therefore, for good cause shown,

THE COURT **ORDERS** that the Petition for Review of Nevada State Engineer Ruling No. 6035 (#1), filed by Truckee-Carson Irrigation District, Churchill County, and the City of Fallon is DENIED.

DATED this 31 day of March, 2014.

Lloyd D. George
United States District Judge